## Case No. 12,350.

### The SARAH J. WEED.

#### [2 Lowell, 555.] [1]

District Court, D. Massachusetts. March, 1877.

MARITIME LIENS—MATERIAL-MEN—FOREIGN PORT—ASSIGNMENT—NOTES GIVEN—SHIP'S AGENT—SUBROGATION.

1. Jersey City is foreign to the city of New York, in the sense of the law governing supplies to ships.

2. The note of an agent of a ship taken by material-men does not affect their lien, unless so intended by both parties.

3. The lien of material-men is assignable; and the assignee should proceed in the admiralty in his own name, if the assignment is absolute. The case of Patchin v. The A. D. Patchin [Case No. 10,794], dissented from.

[Approved in Ross v. Bourne, 14 Fed. 861. Followed in The American Eagle, 19 Fed. 879. Cited in The M. Vandercook, 24 Fed. 474.]

[Cited in Murphy v. Adams. 71 Me. 118; Sibley v. Pine Co., 31 Minn. 202, 17 N. W. 338.]

4. The note of a third person, given as security for supplies to a ship, must be produced in court when a decree for the price is made against the ship, and the amount realized from the decree must be indorsed on the note.

5. Supplies furnished in Maine by a material-man in New York to a vessel belonging in New York, are foreign supplies, and give rise to a privilege.

[Cited in The Agnes Barton, 26 Fed. 543; The Vigilancia, 58 Fed. 700.]

6. This rule applied in favor of the ship's agent.

[Cited in The J. C. Williams, 15 Fed. 559; The Chelmsford, 34 Fed. 402.]

7. The general agent of a ship at her home port is not entitled to be subrogated to the lien of seamen whose wages he has paid in the regular course of his agency.

[Cited in The J. C. Williams, 15 Fed. 559; White v. $292,300, 19 Fed. 848; The Esteban De Antunano, 31 Fed. 923; The Amos D. Carver. 35 Fed. 667; The H. E. Willard. 53 Fed. 601; China Mut. Ins. Co. v. Ward, 8 C. C. A. 229, 59 Fed. 714; The Allianca, 63 Fed. 732.]

Supplies and repairs. The Sarah J. Weed was a steamboat built and owned in New York, and employed in and near the harbor of the city of New York in towing vessels and similar duty from October, 1874, when she was new, until (June, July) 1876. In that month the steamboat was sent to the Kennebec river in Maine, and was there employed during the remainder of the summer. She came to Boston in the latter part of 1876, where some repairs and supplies were furnished, and where she was afterwards arrested and sold at the suit of material-men, the owners having failed to stipulate for her. The sum of $6,897.13 now remains in the registry for distribution, and claims have been filed by material-men, mortgagees, and others against this fund. The various parties were heard

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

upon the evidence produced by them respectively; and, as it was doubtful whether the fund would pay all in full, each was allowed to dispute the claim of the others.

E. Avery and G. M. Hobbs, for mortgagees.

R. D. Smith, for owners and agent.

F. Goodwin, for Donegan.

G. M. Reed, for Canfield and others.

F. Dodge, W. A. Herrick, and R. Thompson, for several petitioners.

LOWELL, District Judge. I will examine the disputed claims in their order on the docket.

Canfield & Quintard's claim: This firm claim a considerable balance of account for coal and wood supplied to the steamboat at their wharf at Jersey City. The custom was for the master to order and receive his supplies from time to time as he needed them, and once a month the bills were settled with the ship's agent, Mr. Weed, in New York. Weed occasionally paid cash, but more often gave his own notes to the order of Canfield & Quintard, which the latter would usually procure to be discounted.

1. Jersey City is foreign to New York, and therefore the material-men have a lien by the general maritime law, unless they have waived it. Thomas v. The Kosciusko [Case No. 13,901]; The John Lowe [Id. 7,356].

2. Taking a note is not a waiver of the lien, unless it was so intended by the parties. The Chusan [Id. 2,717]; The St. Lawrence, 1 Black [66 U. S.] 522; The Kimball, 3 Wall. [70 U. S.] 37; The Emily Souder, 17 Wall. [84 U. S.] 666. In this case no waiver was intended, for the material-men, when they received cash, receipted the account, and when they took a note, merely said, at the foot of their bill, "received a note," describing it.

3. It came out upon the examination of one of the petitioners that they had made some sort of an assignment of their property for the benefit of creditors, and that this petition is presented with the consent of the assignee. Thereupon the argument is made that a maritime lien is incapable of assignment.

That a debt secured by hypothecation may be assigned, together with the securities, would seem to be plain enough, but for some comparatively recent decisions in several district courts which have denied it, and which I will examine. But, first, I will show that many of the authorities which take the highest rank in the admiralty of this country have upheld such assignments.

In Thomas v. Osborn, 19 How. [60 U. S.] 22, a libel was brought against a ship by the assignee of a material-man, and Chief Justice Taney, at the circuit, made a decree in his favor. The supreme court reversed the decree, the chief justice dissenting. The arguments on both sides were on the merits

of the case, and the simple point that the assignee had no standing in court which would have been decisive of the case was not alluded to by the bar or the bench. We have no report of the decision of the chief justice in the court below, but it is plain that he cannot have overlooked the point, because in Reppert v. Robinson [Case No. 11,703], his attention had been called to it; and he must have been satisfied that his dictum in that case could not be supported. Indeed, that dictum goes the length of intimating that a chose in action cannot be assigned in the admiralty, which no one will now contend for. "It is every day's practice in admiralty," said Nelson, J., "to allow suits to be brought in the name of the assignee of a chose in action." Cobb v. Howard [Id. 2,924]. Judge Sprague made a similar remark in Swett v. Black [Id. 13,690]; and the remarks in those cases were not dicta only, but were a necessary part of the decision.

In The Hull of a New Ship [Case No. 6,859], Judge Ware examined the point upon principle and authority, and held that the debt due a material-man could be assigned, and that the hypothecation went with it. A similar point was decided by Judge Betts, in The Panama [Id. 10,703]. In Judge Sprague's Reports there is a head-note which passed under his revision to the like effect in The General Jackson [Id. 5,314], though the case did not require, perhaps, a decision of the point, as the debt had been assigned only as security. A similar dictum by Judge Betts is found in The Boston [Id. 1,669]. In The Cabot [Id. 2,277], the holder of a bottomry bond bought the debts due the seamen, and took an assignment, and filed a separate libel for them. The learned judge upheld the assignment, and, of course, decided this point; but he informed the bottomry holder that he had caused unnecessary expense, because the law would have made the assignment for him, and that one libel would have sufficed for his bond and the assigned wages. The subrogation which the learned judge refers to is nothing but an assignment operated by the law itself, and is perfectly well established in the admiralty. See The Tangier [Id. 13,744], and the cases there cited.

"It is every day's practice" for underwriters who have paid a loss, or to whom an abandonment has been made, to sue in their own names in the admiralty, not only for damage against a vessel which has injured the ship which they have insured, but for general average, and other matters arising ex contractu or quasi ex contractu. The Monticello, 17 How. [58 U. S.] 152; Fretz v. Bull, 12 How. [53 U. S.] 466; Mutual Safety Ins. Co. v. The George [Case No. 9.981].

In The Wasp, L. R. 1 Adm. & Ecc. 367, a shipwright, who had assigned the debt, successfully maintained an action in rem for the benefit of his assignee. Our practice, as we have seen, permits the assignee to sue; but if the assignment has been of part of the debt only, the action may be maintained by the assignor for the benefit of himself and the assignee. Fretz v. Bull, 12 How. [53 U. S.] 466. In The John Cock, 17 Jur. 306, the assignee in insolvency of a master of a vessel applied for leave to prosecute in rem for the balance due the master, without the usual stipulation for costs, and we learn from 2 Pritch. Adm. Dig. p. 524, that leave was given.

The decisions on the other side to which I have referred begin with Patchin v. The A. D. Patchin [Case No. 10,794], in which Judge Conkling decided that the lien of a seaman could not be assigned. His reasons are singular. They are, that at common law liens upon chattels are closely limited and depend upon actual possession, and so from their very nature cannot be transferred; for the mechanic has no right to transfer the possession. He adds: "In the absence of any authority to the contrary, the mariner's lien ought in like manner to be considered as restricted in its design, and as merely personal." Now, nothing can be more different than a lien at common law and one in the admiralty, and especially in the necessity for possession; and to reason from one to the other, upon the very point upon which they differ the most strikingly, is not sound reasoning. Then, the absence of authority might properly lead to the conclusion, one would say, that a court of admiralty, which is equitable in its modes of dealing, would uphold assignments of choses in action; because, if it differed in this respect from other courts of equity, there would be no lack of cases in which those differences would be pointed out and explained. Authorities were not wholly wanting, since Judge Ware's decision and two of Judge Betts's had been made before this time, though I am not sure that any of them had been published. Judge Conkling's case was cited and followed by Judge McCaleb, in Sturtevant v. The George Nicholaus [Id. 13,578];[2] Judge Leavitt, in Logan v. The Aeolian [Id. 8,465]; and Judge Longyear, in The Champion [Id. 2,583]. Only in the last of these cases is there any examination of authorities, and Judge Longyear regrets that he has not had time to make a more careful search for the decisions. He does not cite Thomas v. Osborn [supra], nor the decision of Judge Ware, nor the more important of those of Judge Betts. I have found but one other dictum in this matter: Judge Magrath, of the district court for South Carolina, decided that taking a note would not discharge the lien of a material-man, but added, by way of dictum, that negotiating the note would discharge it. The

---

[2] The same learned judge admitted an assignment by subrogation in Carroll v. The T. P. Leathers [Id. 2,455].

Kensington [Case No. 6,122]. He says that Judge Story says that Emerigon says that such a lien is a "personal privilege." He had been citing The Nestor [Id. 10,126], and the opinion in that case does contain such a statement. But Judge Story does not mean that it is not transferable: to use his expression in that sense is to make a bad pun or quibble. What he means is, that it is a personal, as distinguished from a real, privilege, according to the classification of the civil law, which has nothing whatever to do with its being assignable or otherwise.

Judge Longyear refers to some decisions under the mechanic's lien laws of the several states, relating to land and buildings. The analogy is not very close, because those liens are imposed by positive law upon the land of persons who have in some respects less opportunity to protect themselves than a ship-owner has, and in favor of persons whose means of protecting themselves are much better than those of persons who supply a ship; and more especially, because land is not a ship, and the commercial law does not resemble the law of landed property. There is, undoubtedly, much difference of opinion and decision on this matter under those laws, and I do not think it worth while to examine the cases. The general rule of equity is clear, that what a man has he may assign, excepting damages for wrongs of a personal nature, such as slander or assault. The convincing reason is that given by Judge Ware, in the case cited, that the debtor cannot be injured by an assignment, while the creditor will lose part of the benefit of his security, if he cannot assign it.

The assignment here is said to be for creditors; and I have no doubt that all debts due and all securities for those debts are, and always have been, assignable for that purpose. Our bankrupt act expressly says, in section 5046, that there shall vest in the assignee all debts due the bankrupt, and all liens and securities therefor. This is only declaratory of the law as it has been held under all bankrupt and insolvent statutes; and admiralty liens have been repeatedly upheld in favor of assignees in bankruptcy and insolvency. I am of opinion that the general law of the admiralty is that debts due material-men are capable of assignment, together with the liens and securities therefor, and that this would be the law of assignment for creditors in bankruptcy or insolvency in any event.

As it is our practice for the assignee to sue in his own name, the petition must be amended by joining the assignee. Any notes that are outstanding must be produced to the clerk. As they were the notes of Mr. Weed, a third person, they need not be cancelled, unless the money holds out to pay them in full; but the amount paid under the decree must be indorsed on them.

Donegan's claim: Donegan was to furnish a condenser made of copper tubes for a given price at New York; but the vessel left the port before the articles were ready, and the contract was varied, so that the tubes were sent to Portland in charge of the claimant's foreman, who delivered them on board the vessel; but the master left that port before they were put into place, and took them with him. If this debt comes under the law of New York, giving a lien for work and materials upon domestic vessels, it is not barred, because the required notice may be recorded at any time within ten days after the vessel returns to the port where the debt was contracted; and this ship had not returned to New York when this petition was filed. But it is plain, upon inspection of the statute, that, in order to hold a lien, the contract must be made and the work and materials must be actually furnished within the state of New York. 3 Rev. St. 1875, p. 782; and so are the cases Moores v. Lunt, 4 Thomp. & C. 154; Phillips v. Myers, 30 How. Prac. 184; Crawford v. Collins, 45 Barb. 269.

Hence the question arises whether these materials were furnished in the home port in the sense of the general maritime law, or, in other words, whether there is an intermediate case between the foreign and domestic laws where there will be no lien. The Massachusetts lien law evidently proceeds on the same theory that the supplies must be actually furnished within the state to create a domestic lien. Gen. St. c. 151, § 12 et seq. I think the maritime law agrees with this theory, and holds that supplies furnished in a foreign port, though by a citizen of the state to which the vessel belongs, are foreign supplies. I have not had time to examine all the cases, but have a strong impression that there are such, and think I have once decided so myself. The converse has been held in two cases, that supplies furnished in the home port by a foreigner will be domestic supplies. Thomas v. The Kosciusko [Case No. 13,901]; The Eliza Jane [Id. 4,363]. I feel safe in deciding, without a more exhaustive examination of the authorities, that the law is so.

Weed's case: Upon the ground just mentioned, I think Mr. Weed may have a lien for the money he furnished to the master in Maine. It is always a question of fact of some difficulty whether the agent of a vessel does not look to the personal credit of the owners, or to his equitable lien on the freight. But upon the evidence of the state of credit of these owners and of the situation of the vessel, I think I may hold that for supplies furnished after the vessel left New York the agent may have a lien.

He asks for a charge, by subrogation, for wages which he paid seamen in New York. But here he stands very differently. Those were disbursements made in the usual course of his agency, like those made by the master of a vessel in a foreign port, in which Mr. Justice Curtis refused subrogation in The Larch [Case No. 8,087]. Much of the reasoning of the learned judge in that case seems to me to

put bounds to the doctrine of subrogation, which cannot be submitted to, as I have shown in The Tangier [Id. 13,744]; but the decision in The Larch [supra], which is binding upon me, denies the agent this right; and so is The Louisa, 6 Notes of Cas. 531. Subrogation is an equitable assignment, operated by the law itself, when justice requires it; as, for instance, when a surety pays the debt of his principal, not when an agent pays it; or when one having an interest in the property or res, or honestly believing himself to have an interest, pays an earlier incumbrance. None of these considerations apply to an agent, and I am not aware that the rule has ever been extended to such a person.

The claims, respectively, of Heather and Jarrard were for supplies furnished in New York, when the boat was in her home port; and the time for recording notice was suffered to expire without record. They are rejected.

Three mortgagees have made claims, which are admitted to be valid; but their payment must be deferred until those of material-men are paid in full. I am aware that in some recent cases it has been held that mortgages and the liens of material-men rank alike; and in other cases the opposite rule has been applied, which I now apply. But these were all cases of domestic liens, and their rank must depend on the law which gives them their existence; and I dare say all those cases may be reconciled by study of the several statutes. These are general liens in this case, and there is no sort of doubt that they take precedence of a mortgage, unless they have become stale. The material-men are to share pro rata, if there is not enough for all. In the case of a sea-going ship, the liens rank in the inverse order of their dates, if a voyage or voyages have intervened between them; but I see no reason to apply that rule to supplies furnished to a boat from week to week, as she goes about her ordinary work in harbor, nor to draw a line between such supplies and those furnished in Maine or Boston, because it does not appear that the material-men in New York had any sufficient notice that she was to be employed in a new service, and therefore they had no particular occasion or opportunity to enforce their rights before she left that port.

Let a decree be drawn in conformity with this opinion.