THE SYLVAN STREAM.

*(District Court, N. D. New York.  June 12, 1888.)*

1. MARITIME LIENS—UNDER STATE LAWS — FOR SUPPLIES—ADMIRALTY—JURISDICTION.
   3 Rev. St. N. Y. (7th Ed.) 2404–2410, as amended by Laws 1886, p. 170, providing for a lien upon ships and vessels for supplies furnished them in their home port, though invalid for the purpose of conferring jurisdiction to enforce the contract by proceedings *in rem* in the state courts, create a lien which will be recognized and enforced in admiralty.

2. SAME—SUPPLIES—RUNNING ACCOUNT.
   Under 3 Rev. St. N. Y. (7th Ed.) 2404–2410, as amended by Laws 1886, p. 170, providing for a lien on vessels for supplies furnished them, the lien will attach, although the demand be for a running account.

3. SAME—SALE TO STEWARD.
   Where supplies were sold to the uniformed and certificated steward of a vessel, with the knowledge and consent of the master, and in one instance to the master himself, the owners of the vessel cannot escape liability therefor on the ground that they had a contract with a firm of caterers to feed the passengers; the vendor having no notice thereof.

4. EVIDENCE—DOCUMENTARY—BOOK ENTRIES.
   Where it appeared, irrespective of a book of account, that certain items of goods entered therein as sold were delivered; that certain entries were taken down from the lips of the purchaser, and known by him to state the transaction correctly; and that the goods were placed in the vendor's wagon in the usual course of business for delivery to the purchaser,—although the book is not competent evidence of items not proven, there is evidence of a sale and delivery of goods, and the quantity may be established by reference to a commissioner.

In Admiralty.    Libel for supplies furnished a vessel.

*Horace G. Pierce,* for libelant.
*William N. Cogswell,* for respondent.

Coxe, J. The libelant seeks to recover for supplies furnished, during June and July, 1887, to the steam-vessel Sylvan Stream, in her home port, by virtue of the provisions of the statutes of this state providing for a lien in such circumstances. 3 Rev. St. N. Y. (7th Ed.) 2404–2410; Amend. Laws 1886, p. 170. The defenses are—*First,* that this statute is unconstitutional; *second,* that, if valid, it is not applicable to a running account; *third,* that the libelant's contract was not with the boat, and did not create a lien; and, *fourth,* that the evidence is insufficient to establish a sale and delivery of the goods. It is now well settled that the sections of the act in question which attempt to confer jurisdiction upon the state courts to enforce a maritime contract by proceedings *in rem* are unconstitutional and void. *The Moses Taylor,* 4 Wall. 411; *The Hine* v. *Trevor,* Id. 555; *In re Josephine,* 39 N. Y. 19; *Brookman* v. *Hamill,* 43 N. Y. 554; *Vose* v. *Cockcroft,* 44 N. Y. 415; *The Edith,* 94 U. S. 518. On the the other hand, it is with equal certainty established that the sections of the statute which, in maritime contracts, created a lien, are valid, and can be enforced in the admiralty. The decision in *The Edith,* 11 Blatchf. 451, relied upon by the respondent, was overruled in *The John Farron,* 14 Blatchf. 24, upon the authority of *The Lottawanna,* 21 Wall. 558. Since that time it has been the constant and uniform practice of the admiralty courts to recognize and enforce liens in maritime contracts created by state legislation. Among many reported cases see the following, which arose under the statutes of New York: *The Delos De Wolf,* 3 Fed. Rep. 236; *The Julia L. Sherwood,* 14 Fed. Rep. 590; *The Ella B.,* 26 Fed. Rep. 111; *The Alanson Sumner,* 28 Fed. Rep. 670; *The Grapeshot,* 22 Fed. Rep. 123; *The Arctic,* Id. 126. And the following under similar statutes in other states: *The Burnside,* 3 Fed. Rep. 228; *The Guiding Star,* 18 Fed. Rep. 263; *The Canary No. 2,* 22 Fed. Rep. 532; *The Howard,* 29 Fed. Rep. 604; *The Helen Brown,* 28 Fed. Rep. 111; *The Venture,* 26 Fed. 285; *The Huron,* 29 Fed Rep. 183; *The Kate Hinchman,* 7 Biss. 238.

The proposition that the libelant's debt was made up of items extending over a period of two months, and that the statute does not apply to a running account, cannot be maintained. *The Grapeshot, supra.*

The goods were sold upon the order of the uniformed and certificated steward of the Sylvan Stream, with the knowledge and consent of the master. In one instance they were ordered and delivered to the master himself. The charges were all made to the boat in the libelant's day-book, and a pass-book was kept with the boat, which was delivered to and retained by the steward. The fact that the owners had a contract with a firm of caterers to feed passengers and crew during the season of 1887 is of no importance, because the fact was wholly unknown to the libelant. He could not have intended to give credit to the firm, for he had never heard of them; nor to the owners, because he did not know who the owners were. It seems entirely clear that credit was given to the vessel, and to her alone. The libelant furnished the supplies upon

the order of one who appeared to be the agent of the boat, with the approbation of the master, and the apparent approbation of the owners. If the facts were otherwise than as they appeared to be, the owners, and not the libelant, should suffer the consequences. If Gaffney was not the steward of the Sylvan Stream, he should not have been permitted to advertise himself as such to the public. It is too late, after permitting the libelant to be misled by appearances, which would have deceived the most cautious dealer, to turn him over for payment to a worthless and absconding partnership because of a secret agreement existing between such partnership and the owners of the boat. The libelant's day-book cannot properly be received in evidence in its entirety as a book of account to establish the truth of charges therein made. *Gould* v. *Conway*, 59 Barb. 355; *Vosburgh* v. *Thayer*, 12 Johns. 461; *Ives* v. *Waters*, 30 Hun, 297, and cases cited. In every case where there has been a long course of dealing between parties it is well-nigh impossible to prove by the positive recollection of a witness the delivery of every item in a long account. It is so here; but delivery of several of the items were proved irrespective of the book. In other instances the entries were shown to be original entries taken down by the witness from the lips of the purchaser, or in his presence, and known by him at the time to correctly state the transaction. It was also proved that the goods were placed in libelant's wagon in the usual course of business for delivery to the steamboat. In a large majority of instances the *memoranda* found in the book are competent as having been made contemporaneously with the order, by a witness who knew them to correctly state the facts. *Guy* v. *Mead*, 22 N. Y. 462. There was no complaint that the articles charged were not received, and there is no pretense on the part of the respondent that they were not all delivered on board the boat. It follows that the libelant is entitled to recover; the exact amount, however, it is not easy to determine upon the evidence now before the court, as many of the *memoranda* in the day-book are not properly verified. There should be a decree for the libelant, with costs, and, unless the parties can agree, a reference to compute the amount.