## THE CITY OF CAMDEN.

(District Court, S. D. Alabama. July 25, 1906.)

No. 1,119.

1. MARITIME LIENS—REPAIRS AND SUPPLIES IN HOME PORT—LIEN GIVEN BY LOCAL LAW.

Claims for materials, repairs, and supplies for a vessel which arise in the home port, and for which a lien is given by the local law, stand on the same footing as is given by the maritime law to similar claims arising in a foreign port.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Maritime Liens, § 60.

Maritime liens created by state laws, see note to The Election, 21 C. C. A. 21.]

2. SAME—MONEY LENT TO PAY OFF LIENS.

One who lends money on the credit of a vessel to enable the owner to pay off liens thereon given by the state law, and which is so used, acquires a lien of equal standing with those discharged.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Maritime Liens, §§ 18, 36; vol. 44. Cent. Dig. Subrogation, §§ 65, 66.]

3. SAME—CORPORATION OWNER—MONEY LENT BY TREASURER.

The fact that one who lent money to a company which owned a vessel to be used in paying off claims which were liens thereon under the state law was the treasurer of such company does not prevent him from acquiring a lien of equal standing, where it is clearly shown that the loan was made on the credit of the vessel; and while his being the legal custodian of the company's funds is strong evidence that the loan was made on the credit of the company, and not of the vessel, it is not conclusive, and may be overcome by evidence showing the company's condition.

4. SAME—MONEY DUE FOR INSURANCE PREMIUMS.

The admiralty law gives no maritime lien on a vessel for unpaid premiums for insurance thereon.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Maritime Liens, § 17.]

In Admiralty. In the matter of the claim of T. T. Tunstall, intervener, for money lent or advanced.

Pillans, Hanaw & Pillans, for intervener.
Gregory L. & H. T. Smith, for defendant.

TOULMIN, District Judge. It is well settled that, by the general maritime law, one who loans or advances money to the master or

owner of a vessel, who is without funds, in a foreign port, to be used in furnishing materials, repairs, or supplies to the vessel, and which is actually used for that purpose, is entitled to a maritime lien on the vessel therefor; and that where funds are loaned in a foreign port to discharge valid existing maritime liens, and are so used, the lender may properly and equitably stand in the place of the lienholders whose demands have been discharged with the funds furnished by him. The Guiding Star (C. C.) 18 Fed. 263; The Augustine Kobbe (D. C.) 37 Fed. 701; Nippert v. Williams (C. C.) 42 Fed. 542; The Worthington, 133 Fed. 725, 66 C. C. A. 555, 70 L. R. A. 353; The Emily Souder, 17 Wall. 666, 21 L. Ed. 683; Hughes on Admiralty, 96. "By the general maritime law, which gives a lien on a vessel for necessaries furnished to her in a foreign port, money is registered as material." The City of Salem (D. C.) 31 Fed. 616, 2 L. R. A. 380. It is likewise well settled that, by the maritime law, for supplies or other necessaries furnished a vessel in her home port, or for money advanced or loaned to her to pay for the same, there is no implied lien. In such case the credit is presumptively given to the owner personally, and not to the vessel. The Emily Souder, supra; The Samuel Marshall, 54 Fed. 399, 4 C. C. A. 385; The Kate, 164 U. S. 458, 17 Sup. Ct. 135, 41 L. Ed. 512; The Queen of St. Johns (C. C.) 31 Fed. 24.

Money advanced upon the credit of the boat, to pay off claims of a maritime nature, entitled to liens in admiralty, and actually used for that purpose, are entitled to the same rank in the distribution as the claims which were thus paid off. Claims for materials, repairs, and supplies, which arise at a home port for which a lien is given by the local law, are entitled to the same footing with claims arising in foreign ports. These claims while maritime in their nature, as founded upon maritime contracts, are not invested by the maritime law with a lien upon the vessel, enforceable as such by admiralty process in rem; but a lien upon the vessel in respect to them being given by the local law of her home port, it is enforceable in the admiralty court, and is controlled by the principles of the admiralty law. The Guiding Star, supra, and other authorities cited supra; The Sylvan Stream (D. C.) 35 Fed. 314. The state law of Alabama declares a lien on any steamboat in this state for work done or material supplied by any person within the state, in and about the repairing, furnishing, and supplying such steamboat; and for wages of laborers, and shipkeepers of the same. Code Ala. 1896, § 2758. It seems to be settled, at least by the weight of authority, that money advanced to pay maritime claims that are liens by virtue of a local law, as well as of the maritime law, may itself become a lien against the vessel whose debts have thus been discharged. "But in order to establish a lien for money advanced, it must be clearly shown that it was advanced on the credit of the vessel to pay lien claims, and that it was so used." The Wyoming (D. C.) 36 Fed. 493, and authorities cited therein. "Before a lien exists for money advanced, it must be clearly shown that the purposes for which it is advanced are entitled to a lien. If advanced for the purpose of paying claims to which a lien in admiralty

attaches, in that case a lien attaches to that money, but not otherwise." The Guiding Star (D. C.) 9 Fed. 521.

To entitle the intervener to a decree it must appear from the evidence that he loaned to the owner of the steamboat, City of Camden, money to pay off valid claims against her; that he so loaned the money on the credit of the boat, and that said claims were entitled to liens on the boat. To entitle said claims to such liens, it must appear that the materials and supplies, on account of which said claims were made, were used by the boat, and that the repairs, work, and labor which were paid for with the money loaned by the intervener, were done on, in, or about the boat. There are cases which hold that the state statutes which provide for liens on a vessel in her home port create a conclusive presumption of credit to the vessel—notably the case of The Iris, 100 Fed. 104, 40 C. C. A. 301. There are also cases which hold to the contrary—notably the case of Samuel Marshall, 54 Fed. 399, 4 C. C. A. 385. I think the decided weight of authority sustains the case last cited.

However, in this case, the question as to which line of decisions shall be followed is not a practical one, as the evidence tends to show that the intervener loaned the money on the credit both of the vessel and the owner. The case of the Murphy Tugs (D. C.) in 28 Fed. 429, which is mainly relied on by the contestants of intervener's claim, I think is distinguishable from this case. In that case, Thomas Murphy, the chief engineer of a line of tugs, whose services consisted in planning, superintending, and directing the operation and repairs upon the several vessels of the line at a salary, presented a claim for salary, and also bills for repairs put upon these vessels. The court disallowed the salary, and postponed the lien for repairs. It appeared that Murphy was a stockholder and director, and the treasurer of the company to which the tugs belonged. Judge Brown, who decided the case, said that he did not think the mere fact that Murphy was a director and stockholder would necessarily prevent his contracting with the company, or from acquiring a lien upon the property. But that his position as the legal custodian of its funds was strong evidence to show that he relied upon the personal credit of the company, or rather, upon his ability to pay himself out of its funds, and his lien should therefore be postponed to that of the other creditors.

The effect of the decision, it seems to me, is that the stockholder of a company is not prevented from contracting with the company, and from acquiring a lien on its property, but the fact that he is the treasurer of the company, and as such the legal custodian of its funds, is strong evidence that he relied upon his ability to pay himself out of its funds, and hence contracted upon the personal credit of the company, and, therefore, his lien should be postponed to that of other creditors. The decision recognizes the right of a stockholder and treasurer to contract with his company, and to acquire a lien upon its property, but it holds that the treasurer having the legal custody of the funds of the company, or the right to have them, and to pay himself out of them, by waiving such right or failing to exercise

it, his lien should be postponed to those of other creditors. In the case at bar, the claimant was a stockholder and the treasurer of the company owning the boat, but it appears that the company had no funds at the time he loaned the money to the company to pay off the claims against the boat, and has had no funds in his custody since that time, and it appears that he loaned the money to pay such claims at the request of the manager of the company. The same reasons do not exist in this case as in the Murphy Tugs Case for denying the lien claimed.

It seems to me, in accordance with the weight of reason and authority, the intervener, who loaned the money on the credit of the boat to enable the owner to pay off liens given by the state law, and which was so used, acquired a lien of equal standing to those discharged with the money so loaned. Money loaned to pay a bill stands in the same relation to the boat as the bill paid. If that was a lien so is the new debt created by the loan, but not otherwise. Nippert v. Williams, supra; and other authorities cited, supra. Admiralty law gives no maritime lien on a vessel for unpaid premiums on insurance thereon. The Daisy Day (C. C.) 40 Fed. 603, and authorities cited therein. The items for insurance claimed in the intervener's account are, therefore, disallowed. The other items in his account disallowed are found in statement hereto annexed, marked "A." They are disallowed because not shown by the evidence to have been material used by, or work done on, the boat, and therefore lien claims of a maritime nature. The items of said account allowed are found in statement hereto annexed, marked "B." These will be paid pro rata from the proceeds of the sale of the vessel.

The exceptions of the intervener to the report of the commissioner are sustained; said report will be amended in accordance with the conclusions herein expressed, and a decree entered confirming the report as thus amended. And it is so ordered.