---

### THE GYDA.

#### (District Court, D. Maine. July 31, 1916.)

#### No. 338.

MARITIME LIENS ⬤⟞6—PERSONS ENTITLED TO LIEN—OFFICERS OF OWNING CORPORATION.

    A stockholder in the corporation owner of a vessel, who is also a director and the treasurer and general manager, having full management of the business of the corporation and receiving and disbursing all its earnings, is not entitled to a maritime lien for services rendered, nor for money advanced to pay a claim for repairs; the presumption being that he relied on the credit of the company.

    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 10; Dec. Dig. ⬤⟞6.]

In Admiralty. Suit by H. Dexter Malone and others against the gasoline schooner Gyda. In the matter of the claim of Frank R. Neal, intervener, to a maritime lien. Claim disallowed.

Gerry L. Brooks, of Portland, Me., for intervener.

Benjamin Thompson, of Portland, Me., for mortgagee.

HALE, District Judge. Upon this libel the schooner Gyda was seized on January 11, 1915. On January 21st she was sold by the marshal, on an interlocutory order of sale; the proceeds of the sale were paid into the registry of this court. The intervener, Frank R. Neal, seeks to establish an admiralty lien for supplies furnished in

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the operation of the Gyda. William M. Prest, holder of a mortgage on the Gyda, has also filed an intervention praying that his mortgage may be adjudged a lien on the remnants, and ordered to be paid from the funds in the registry. Prest contests the right of Neal to a maritime lien.

No question is made that the court, having sold the steamer on admiralty process, will dispose of the fund in the registry among the parties who are legally entitled to the same. Andrews v. Wall, 3 How. 568, 573, 11 L. Ed. 729; The Lottawanna, 21 Wall. 558, 582, 22 L. Ed. 654; American Trust Co. v. Fletcher Co., 173 Fed. 471, 476, 97 C. C. A. 477.

The proofs show that the Gyda and also the Wissoc were owned by the Seacoast Fisheries Company, a corporation organized under the Massachusetts laws, on August 28, 1915; that by vote of the directors Frank R. Neal was elected treasurer and general manager, with full power to act for the company. At the time referred to in his petition he was a stockholder in the company, and director, treasurer, clerk, and general manager of it. As treasurer, he received whatever funds were earned by the vessels, and disbursed them on the various accounts due from the vessels; he had the general management of the boats; he attended to provisioning them, keeping them up, and seeking markets for cargoes. The by-laws of the company (article 6) provided:

> "The treasurer shall have charge of all funds and property of the company, and shall keep an accurate account of the same, depositing all money in the name of and to the credit of the company, and pay out the same as instructed by the board of directors."

As general manager he had "full power to act on behalf of the company, on all matters, as fully and as effectively as the board of directors itself could do." It appears that, as manager, he managed the affairs of the company.

His claim is, in part, for money expended for the schooner Gyda, under the following circumstances: In February, 1914, it became necessary to have repairs made upon the schooner; by order of Neal this work, amounting to $135, was done by Richard T. Green Company. In March following it became necessary to have certain other work done on the schooner, amounting to $74.27. The first amount not having been paid, and the company being without funds, the Richard T. Green Company refused to do any further work until the first amount was paid; and, it being necessary to have the work done, Neal paid the $135 and took an assignment of such claim. The second part of Neal's claim consists of one item, namely 22 weeks' labor, at $20 per week. He claims that, for all the time at $20 a week, he was employed as a seaman or fisherman, either on board the schooner or as a "resident member of the crew." He testifies that the practice in Gloucester was for a certain number of the men to stay ashore while the rest were out fishing, so that the nets might be repaired, and certain other work done, to carry on the business in which they were engaged. The learned proctor for the mortgagee (Prest) contends that Neal, being a stockholder in the Seacoast Fisheries Company,

a director in it, and manager and clerk of it, is a part owner of the vessel, within the meaning of the maritime law; that he is not entitled to a maritime lien for any service that he may have rendered; and that his acquiring the claim of the Richard T. Green Company, by assignment, was not only upon the credit of the owner; but that the payment of such claim operated to discharge any maritime lien that the assignor of the claim may have had.

In the case of the Murphy Tugs (D. C.) 28 Fed. 429, Judge H. B. Brown, for the District Court of Michigan, held that, where a stockholder, director and treasurer of a steamboat line, put repairs on several vessels of the line, his lien, if he had any, should be postponed to that of the other creditors. Judge Brown said that he did not think that the mere fact that Murphy was a director and stockholder would necessarily prevent his contracting with the company or from acquiring a lien on the property; but that his position as the legal custodian of its funds was strong evidence to show that he relied upon the personal credit of the company, or rather upon his ability to pay himself out of its funds, and his lien should be postponed to that of the other creditors.

In The Cimbria (D. C.) 214 Fed. 131, the District Court of New Jersey, 1914, held that a stockholder and director in a steamboat company, who took an active part in the management of its business, was, in essence, a part owner of its vessel, and, against strangers to the title who have a maritime lien, is not entitled to a maritime lien on one of the company's vessels for supplies furnished or for advances made to pay claims for repairs and supplies. The court cited Petrie v. Steam Tug Coal Bluff No. 2 (D. C.) 3 Fed. 531; The Queen of St. Johns (C. C.) 31 Fed. 24. In The Cimbria (D. C.) 214 Fed. 128, 133, the court said:

"In the present case, libelant was more than a mere stockholder. He was a director and actively engaged in transacting the business, involving both the company's finances and its use of the vessel. * * * The conclusion here reached, while contrary to that reached in The City of Camden (D. C.) 147 Fed. 847, is fully supported by The Murphy Tugs (D. C.) 28 Fed. 429, and The Queen of St. Johns (C. C.) 31 Fed. 24, which, squaring more with my own judgment, I am constrained to follow."

In the case at bar, the learned proctor for the intervener, Neal, urges that the case should be decided upon the authority of The City of Camden (D. C.) 147 Fed. 847, and that the proofs establish a lien for his labor, in spite of the decisions to which I have referred. In respect to the payment of Green's claims, he urges that the advances were made solely on the credit of the vessel.

While the question is not entirely free from doubt, and while I find no decisive Supreme Court case, and no case where a Circuit Court of Appeals has passed upon the subject, I am constrained to agree with the conclusions of the court in The Queen of St. Johns (C. C.) 31 Fed. 24, 28, where Judge Pardee, in the Circuit Court, in 1886, said:

"If such liens were to be allowed in a court of admiralty, it would open the door to fraud and collusion."

In the case before me, all the earnings of the company's steamer were received by Neal and disbursed by him; he had the entire management of the finances of the company. I do not find enough in the proofs to take the case out of the rule in the cases I have cited. So far as relates to the payment by Neal of the Richard T. Green Company's account, it has been held in The Sarah J. Weed, Fed. Cas. No. 12,350, by Judge John Lowell, that the general agent of the ship, at her home port, is not entitled to be subrogated to the lien of seamen whose wages he has paid in the regular course of his agency. In China Mutual Insurance Co. v. Ward et al., 59 Fed. 712, 714, 8 C. C. A. 229, in delivering the opinion of the Circuit Court of Appeals, Judge Ward said:

"A ship's husband does not have a maritime lien upon the vessel for the advances made in the course of his agency for the owners, in the absence of an express contract with them to that effect, or of peculiar circumstances from which such a contract should be implied. Presumptively, he relies upon the credit of the owners. The Larch, 2 Curt. 427 [Fed. Cas. No. 8,085]; The Sarah J. Weed, 2 Low. 555 [Fed. Cas. No. 12,350]; White v. The Americus (D. C.) 19 Fed. 848; The Raleigh (D. C.) 32 Fed. 633; The Esteban de Antunano (C. C.) 31 Fed. 920."

In The Raleigh (D. C.) 32 Fed. 633, 634, Judge Brown said:

"When such an agent pays the ship's obligations on the application of the master or the owners, the presumption is that he does so, not as a stranger, but as the agent of the ship and her owners, and upon the personal credit of the latter, or of the future business and earning of the ship." The Georgia (D. C.) 46 Fed. 669; White v. Two Hundred and Ninety-Two Thousand Three Hundred Dollars (D. C.) 19 Fed. 848; Henry's Admiralty, § 47.

After a careful examination of the proofs and of the authorities, I am constrained to find that the intervener, Frank R. Neal, is not entitled to any lien upon the remnants in the registry from the sale of the Gyda, and that his petition should be dismissed.

A decree may be drawn dismissing his petition. In accordance with the stipulation made by the proctors in the case, the claim of the mortgagee, William M. Prest, is established for the full amount, with the further stipulation that it shall be postponed until all the lien claims which have priority by law have been paid. The lien claims having priority have now been passed upon by the court and paid. The claim of William M. Prest, as mortgagee, is therefore adjudged a lien on the fund, in accordance with the stipulation. The fund in the registry, then, after deducting the costs of this proceeding, shall be paid to the mortgagee, William M. Prest, or his proctor of record, in part satisfaction of his mortgage, and a decree to this effect may be presented