## THE PURITAN.

### (District Court D. Massachusetts. June 11, 1919.)

### No. 1655.

1. MARITIME LIENS ⬳6—AGENT OR OWNER.
   Ordinarily, agent or part owner of a vessel is not entitled to liens for advances or subrogation to liens of creditors whose claims he has paid.

2. MARITIME LIENS ⬳6—ADVANCES BY AGENT OR OWNER—EFFECT.
   An agent or part owner of a vessel, making advances clearly upon vessel's credit, may be allowed a lien, when not unfair to co-owners or other lienors.

3. MARITIME LIENS ⬳6—AGENT AND OWNER—ADVANCES.
   Libelants, who were agents of a schooner and stockholders in a corporation owning her, *held* entitled to liens for advances made to pay necessary repair and supply bills, where they specifically stated that advances were made entirely on vessel's, and not upon owner's, credit.

In Admiralty. Libel by Walter A. Norton and others against the schooner Puritan. Decree for libelants.

Hannigan & Fox, Geo. R. Farnum, and Homer B. Kelly, all of Boston, Mass., for libelants.

Louis L. Green, Geo. L. Dillaway, and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., A. S. Littlefield, of Rockland, Me., and L. G. Roberts, of Boston, Mass., for petitioner.

MORTON, District Judge. The facts on which this case is to be decided are contained in the "Stipulation as to Libelants' Evidence," no other evidence having been introduced. The Puritan was owned by a Maine corporation, and constituted its only property. The corporation was not organized until September 20, 1917, and had hardly begun the actual business of operating the schooner at the period here in question. She was proceeding from her home port, Machiasport, Me., to New York, "where she was to be registered upon her arrival." (Stipulation.) While in Massachusetts ports, "she became greatly in need of repairs, supplies, and funds." (Stipulation.) Her master applied to the libelants for advances, representing that, if they were not made, the vessel might have to be abandoned. The necessity which the master stated actually existed.

The libelants are in general shipping business in New York. They were the agents of the schooner and stockholders in the corporation owning her. They made the advances requested by the master, and also paid direct certain bills for necessary repairs and supplies furnished to her. In doing so the libelants "relied entirely on the credit of the vessel and on the security of the existing liens (which were to be paid off), and not upon the credit of the owner, and so advised the captain at the time of the advances." (Stipulation.) The question is whether, under such circumstances, the libelants have a maritime lien for the sums so advanced and paid by them.

[1, 2] As a general rule the agent of a vessel is not entitled either to a lien for advances or to be subrogated to the liens of creditors

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

whom he has paid in the regular course of his agency. The Gyda (D. C.) 235 Fed. 266, 269. Under ordinary circumstances, one part owner of a vessel cannot obtain a lien against his co-owners; and a stockholder in a company owning a vessel has been regarded as a part owner. The Cimbria (D. C.) 214 Fed. 131, 133. The question is essentially one of fact, the decisions referred to proceeding upon the presumption that in such cases the advance or the payment is made on the credit of the owner, not of the vessel. This presumption may be rebutted, and where it is clear that in fact the advance was made upon the credit of the vessel, and that it is not unfair to co-owners or other lienors to allow a lien, the lien is allowed. The City of Camden (D. C.) 147 Fed. 847. It is conclusively settled that for advances of money made to a master in a foreign port, to enable him to meet the necessities of the vessel in the way of repairs, wages, and supplies, a lien exists. The Emily Souder, 17 Wall. 666, 21 L. Ed. 683.

[3] In the present case it is agreed that the advances and payments by the libelants were made on the credit of the vessel and that the master was so informed at the time. In claiming a maritime lien for them the libelants do not seem to me to be acting unfairly, either towards their co-owners (i. e., other stockholders in the corporation) or subsequent lienors, nor to have taken advantage of the fiduciary position which they undoubtedly occupied towards the vessel and her owners. No money from operation of the vessel had apparently come into their hands; the emergency had arisen at the beginning of the enterprise; there was no certainty that the owner (the new corporation) ever would have funds with which to repay the libelants; it was for the interest of all parties that the schooner should be repaired, supplied, and kept going.

I therefore find and rule that the libelants are entitled to a lien for so much of their advances to the master as was used to pay claims on which the creditors would have been entitled to a lien against the schooner, and that the libelants are also entitled to a lien in respect to such payments as they themselves made directly to creditors whose claims would have entitled them to a maritime lien.

Neither the stipulation as to facts nor the oral agreements of counsel at the hearing are sufficient to enable the court to say which of the items of the account annexed to the libel come within the principle of decision just stated. Unless the parties agree, the case must go to an assessor upon this point. No objections being insisted on against the claims of the several interveners, each of said intervening claims is allowed. If any items in the claims of the interveners are objected to as not giving rise to a maritime lien, that matter also may be heard by an assessor.

The libelants may present a decree accordingly.