### THE ASCUTNEY.

### SPICE v. UNITED STATES.

(District Court, D. Maryland. February 10, 1922.)

No. 881.

**Maritime liens ⊜14—Ship's agent held entitled to lien for advances.**

Libelant, appointed agent for a ship's business while in port on a particular voyage, by a charterer under a charter which recognized that liens might be created and required the charterer to pay them within a specified time, *held* entitled to a lien for money advanced on request of the master to pay the ship's bills; the greater part being for charges imposed by law, such as pilotage, tonnage tax, fumigation, etc., and also for his attendance fee.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Suit by Wilbur F. Spice, trading as Wilbur F. Spice & Co., against the United States, as owner of the Steamship Ascutney. Decree for libelant.

George Forbes, of Baltimore, Md., for libelant.

Robert R. Carman, U. S. Atty., of Baltimore, Md.

ROSE, District Judge. The home port of the steamship Ascutney is New York. It is owned by the Shipping Board, but was being operated by the charterer, under option to purchase. It arrived in Baltimore early in 1920. Its master asked the libelant herein, who is in business in this city as a ship's agent and broker, to act as agent for the ship's business while in port on the particular voyage in question. The libelant agreed to do so, and with the master's approval paid certain of the ship's bills. These were:

| | |
|---|---:|
| Inward pilotage | $ 96.71 |
| Fees and charges for fumigation required by the health authorities, including therein $9 for hire of launch for bringing back the fumigation pots from the ship to the quarantine station | 63.47 |
| Tonnage tax | 188.82 |
| Custom house and custom brokers' charges | 7.17 |
| Night engineer for the ship | 10.60 |
| Two taxi bills, of $6 each, for taking the master from the city to the wharf at Curtis Bay, where the ship lay | 12.00 |
| Agents' expenditures for telephone, telegrams, permits, postage, etc. | 14.57 |
| Or a total of | $393.34 |

For this sum, plus the libelant's regular attendance fee of $100, or $493.34, the present libel has been filed.

The learned advocates for the owner have raised and argued several serious and far-reaching contentions as to the construction and effect of the act of 1910 (36 Stat. 604 [Comp. St. §§ 7783–7787]), and particularly as to what inquiries the libelant should have made, and how far he was chargeable with notice of what he could have found out, had he made them. Some of these are of great importance to almost everybody having much to do with ships, or with the things ships need. Judicial opinion as to them is probably still in the making, and the temptation to discuss them is strong, but upon the facts here in evidence it will probably matter little what conclusion shall ultimately be reached as to them.

Most of these charges were for things which were absolutely necessary to the ship. The charter in this case, like that in The South Coast, 251 U. S. 519, 40 Sup. Ct. 233, 64 L. Ed. 386, recognized that liens might be created upon the ship, and required the charterer to pay them off within a definite number of days. They were of the kind for which it was practically impossible to prevent the master from incurring liability. He had to take a pilot. The law required it. The health authorities insisted that the ship should be fumigated. Its tonnage tax had to be paid, and the other trifling items were those which were absolutely essential to the ship. It was argued that the master could have gone in a street car from the agent's office to the ship, instead of going in a taxi cab. Doubtless he could, but with a

large ship, whose time was perhaps worth $50 to $80 an hour, it might ⬤ been doubtful economy.

⬤ is technically foreign port, the master had, before the act of ⬤ s since, the power to bind the ship for necessaries, and, indeed, as to most of them here involved, it would in fact be more nearly accurate to say that neither he nor any one else could prevent her from becoming bound. Taxes, health charges, pilotage fees, etc., are imposed by law. It has, however, been very seriously argued that a person bearing the libelant's relation to the ship does not acquire a lien upon her by paying bills, even of this character. Considerations, which in many cases cited have been held to make it inexpedient to permit a ship's agent, or a ship's husband, to acquire liens upon the ship, have no real application to persons whose relations to the ship are as strictly limited as those of the libelant, employed as he was merely to look after the essential details of her business in a particular port for a particular voyage. He had no control over her, or in any substantial sense over the charges against her, and certainly not over most of those here in controversy. It has been held that even the presumption that a ship's husband or her general agent may not assert liens against her is not conclusive, but rebuttable. The Sarah J. Weed, 21 Fed. Cas. 458, No. 12,350. These charges, other than the attendance fee, had to be paid. The libelant swears that he paid them upon the master's request, and that he gave credit to no one but the ship, and there is nothing in the case to suggest that any one would, at the time, have furnished anything on any other credit than that of the ship. That there is a maritime lien for an attendance fee seems to be settled in this circuit at least. The Wyandotte, 145 Fed. 321, 75 C. C. A. 117.

It follows that the libelant is entitled to a decree for the amount of his claim.