## THE WEST IRMO.

## THE CLAUSEUS.

(Circuit Court of Appeals, Third Circuit. August 26, 1924.)

No. 3123.

**1. Maritime liens ⟳6—General agent of owner not entitled to lien for supplies and disbursements.**

In the absence of an express agreement to the contrary, or facts from which it would be implied, a general agent does not have a maritime lien for advances and disbursements made on behalf of vessels of his principal during his agency.

**2. Maritime liens ⟳6—Libelant held general agent of owner and not entitled to lien for disbursements.**

Libelant, a corporation, which made charters, collected freights, and made advances and disbursements for the several vessels of another corporation with which it was closely affiliated, some of their officers and directors being the same, *held* a general agent for the owner and not entitled to a maritime lien for such advances and disbursements.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suits in admiralty in which Struthers & Dixon, Inc., filed intervening libels against the steamships West Irmo and Clauseus; Robert C. Adams and Stuart A. Young, receivers of the Green Star Steamship Corporation, claimants. From decrees dismissing the libels, libelant appeals. Affirmed.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for appellant.

Bigham, Englar & Jones, of New York City, and McCarter & English, of Newark, N. J. (Charles F. Quantrell and T. Catesby Jones, both of New York City, of counsel), for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and GIBSON, District Judge.

DAVIS, Circuit Judge. This is an appeal from decrees of the District Court dismissing two intervening libels filed by Struthers & Dixon, Inc., against the steamships West Irmo and Clauseus, respectively, for supplies and disbursements to the amount of $121,081.17, on the ground that they were general agents of the owner of the vessels and not entitled to maritime liens. These cases were tried together in the District Court and were consolidated on appeal. The facts and law relating to each case are in principle the same, and both cases will be disposed of in one opinion. The substantial facts are really not in dispute. The question arises over the conclusion to be drawn from them.

The libelant was engaged in operating steam vessels between ports of the United States, the Far East, and elsewhere. It contends that the supplies were furnished and disbursements made, not on the credit of the owner, but on the credit of the vessels, which were away from their home ports and in need of necessaries. The position of the ancillary receivers, on the contrary, is that the vessels belonged to the Green Star Corporation, and the libelant was general agent for it, and therefore the libelant relied on the credit of the owner and stood in its position in supplying these "necessaries." In the case of The Clauseus, an affirmative defense of payment is interposed, which, however, need not be considered, in view of the conclusion here reached.

The Green Star Corporation owned and operated the West Irmo and Clauseus, with about 30 other vessels, and the libelant admitted that it acted as its agent for the 2 in question, on the voyages in which the supplies were furnished and expenses incurred, and that it booked cargoes, issued

bills of lading, advertised sailings, executed charter parties, expended moneys in payment of wages of the crews, repair charges, pilotage, towage · bills, wharfage, customs and port dues, and stevedore charges, and in general disbursed those vessels, with the 30 others, to the extent required. It also collected, for these vessels, freight bills which in some instances were applied to its disbursements, and which in other instances were sent directly to the owner upon which drafts were later drawn for the amounts due libelant on account of disbursements and supplies. In February, 1924, nominees of the Green Star Corporation were elected members of the board of directors of the libelant, whose stock that corporation had agreed to purchase. As a result the Green Star Corporation had, for some time, a majority representation on the libelant's board of directors. The vice president of the libelant was elected vice president of the Green Star Corporation, and its controller and treasurer were appointed controller and treasurer, respectively, of the libelant. All meetings of the board of directors, from February 24, 1920, to July 27, 1921, were held at the office of the Green Star Corporation. Beginning with April, 1920, libelant submitted to the Green Star monthly balance sheets, profit and loss statements, and statements of various vessels belonging to that corporation. The income tax return of libelant for 1920 was filed with that of the Green Star as a consolidated income tax return for both companies.

From these and other facts, the District Court found that the libelant was general agent of the Green Star Corporation. This close·identity of the affairs of these companies would indicate that the libelant was looking, not to the credit of the vessels, but to that of the owner. The Cimbria (D. C.) 214 Fed. 131, 133. The facts in relation to these two vessels are substantially identical with those in the case of The Centaurus, and both the District Court for the District of Maryland and the Circuit Court of Appeals for the Fourth Circuit found that in its relation to that vessel the libelant was general agent of the Green Star Corporation. 282 Fed. 883; 291 Fed. 751. In the cases at bar, the District Court reached the same conclusion, and we think that the evidence not only sustains, but really forces, that conclusion.

[1] It is well settled that, in the absence of an express agreement to the contrary, or facts from which it would be implied, a general agent does not have a maritime lien for advances and disbursements which he makes in behalf of vessels belonging to his principal during his agency. The J. C. Williams (D. C.) 15 Fed. 558; The Raleigh (D. C.) 32 Fed. 633; China Mutual Insurance Co. v. Ward, 59 Fed. 712, 8 C. C. A. 229; The Gyda (D. C.) 235 Fed. 266, 269; The Ascutney (D. C.) 278 Fed. 991; The Centaurus (C. C. A.) 291 Fed. 751. The agent is presumed to rely upon the credit of the owner and not the vessel. This presumption may be rebutted and overcome. The Puritan (D. C.) 258 Fed. 271; The Ascutney (D. C.) 278 Fed. 991, 993. To overcome it, however, the agent must affirmatively prove the existence of an express agreement giving him a lien or such circumstances as justifies the implication of one. The Raleigh, supra; The Puritan, supra; The City of Camden (D. C.) 147 Fed. 847, 849.

[2] The libelant admits that there was no express agreement as to the West Irmo, and none was established as to the Clauseus. The circumstances do not justify the implication that there was such agreement, either oral or written. We think that the evidence taken, as a whole, shows beyond doubt that the libelant was a general agent for the owner, and managed the Clauseus and West Irmo as such.

The close identity between the libelant and Green Star culminated in an agreement that the Green Star purchase the stock of the libelant, whose shipping business was to be transferred to the Green Star as of January 2, 1920. Most of the disbursements made and expenses incurred, which constitute the basis of this litigation, took place after that date. The libelant and Green Star were so closely connected that for all practical purposes they were one. These libels were not filed until the expiration of about two years after the supplies were furnished and disbursements were made. This would indicate that the libelant did not rely upon the credit of the vessels, but upon the credit of the owner.

Therefore it is not entitled to maritime liens, and the decrees of the District Court are affirmed.