## THE M. VIVIAN PIERCE.

### No. 339.

District Court, D. Massachusetts.

March 24, 1931.

R. Chandler Davis, of Gloucester, Mass., for libelant.

John W. Lowrance, of Boston, Mass., for petitioners Crowell & Thurlow and Doane Commercial Touring Co.

BREWSTER, District Judge.

The above-entitled matter is before the court on the intervening libel of Crowell & Thurlow, Inc., which seeks to establish a maritime lien against the schooner M. Vivian Pierce for $700, advanced to the master, which was used in paying the wages of the crew of said schooner.

### Findings of Fact.

The New England Maritime Company was the owner of the M. Vivian Pierce and other vessels. Crowell & Thurlow, Inc., was the managing agent of the ships of the New England Maritime Company, including the M. Vivian Pierce. They chartered these vessels and received a commission for their services. They did not disburse the vessel out of their own bank account, and the freights received were, as a rule, deposited in the account of the maritime company and disbursed directly by it.

Mr. Lewis K. Thurlow was treasurer of the New England Maritime Company and also of Crowell & Thurlow, Inc., and Mr. Richard R. Freeman was secretary of both the New England Maritime Company and Crowell & Thurlow, Inc. Crowell & Thurlow, Inc., held no stock in the New England Maritime Company, but both Mr. Thurlow and Mr. Freeman were stockholders in the New England Maritime Company, holding less than a majority. They were also stockholders in Crowell & Thurlow, Inc., holding more than a majority. Both corporations occupied the same offices, but each kept separate books.

The M. Vivian Pierce arrived in Boston in November, 1930, with insufficient funds to pay the crew, and, in order to comply with the navigation laws and discharge the cargo and thereby earn the balance of the freight, Crowell & Thurlow, Inc., advanced $700 to the master, which sum was paid to the crew on account of the wages due them. If it be material, I find that a necessity existed for the advancement. Within a day or two after this money was advanced, the balance of the freight, in the sum of $400, was received and applied by the New England Maritime Company to the general purposes of that corporation, and was not paid over to this intervenor.

### Conclusions of Law.

There can be no question concerning the right of seamen to assert a lien upon the vessel for their wages. The Minnie and Emma (D. C.) 21 F.(2d) 991. And it has long been the established rule in admiralty that one advancing money to discharge a valid lien gets a lien of equal dignity with the one discharged. The Emily Souder, 17 Wall. 666, 21 L. Ed. 683; The Ruth E. Merrill (C. C. A.) 286 F. 355; The Snetind (D. C.) 276 F. 139; The Commack (D. C.) 8 F.(2d) 151; The Little Charley (D. C.) 31 F.(2d) 120.

The controlling question is whether such a lien can be asserted by a libelant who is the managing agent of the ship. The established rule is that a general agent does not have a maritime lien for advances which he makes on behalf of vessels belonging to his principal during his agency. The Gyda (D. C.) 235 F. 266, 269; The Ascutney (D. C.) 278 F. 991; The West Irmo (C. C. A.) 1 F.(2d) 87, 88.

In the case of The Puritan (D. C.) 258 F. 271, Judge Morton observes that "as a general rule the agent of a vessel is not entitled either to a lien for advances or to be subrogated to the liens of creditors whom he has paid in the regular course of his agency. * * * The question is essentially one of fact, the decisions referred to proceeding upon the presumption that in such cases the advance or the payment is made on the credit of the owner, not of the vessel." This presumption is not affected by the Liens on Vessels Act of 1910 (36 Stat. 604), or the Ship Mortgage Act of 1920, § 30, subsec. S (46 USCA § 974). This presumption, however, may be rebutted, but the courts have consistently held that, in order to do so, the agent "must affirmatively prove the existence of an express agreement giving him a lien or such circumstances as justifies the implication of one." The West Irmo, supra. See, also, The Puritan, supra; The City of Camden (D. C.) 147 F. 847.

In the case at bar, the evidence discloses no express agreement. Do the stated facts justify the court in finding an implied agreement? While the libelant corporation owned no stock in the corporation owning the vessel, there was such an interlocking of interest between the two corporations, both having the same individual as treasurer, that the rela-

tionship of the agent to the principal must, in its bearing upon the presumption that credit was given to the owner, have the same effect as if the libelant were a part owner of the vessel. Clearly, the libelant had complete control over the management of the vessel and the disbursement of her freights. Such ownership and control, however, does not necessarily defeat the right to lien if the facts of the case were sufficient to maintain the libelant's burden of showing that advances were made upon the credit of the vessel and not upon the credit of the owner. The City of Camden, supra; The Puritan, supra.

In the case of The Puritan, supra, the libelants were in the general shipping business, were agents of the schooner, and stockholders in the corporation owning her, and in that case Judge Morton sustained the lien on the ground that the parties had expressly stipulated that the libelants relied entirely upon the credit of the vessel and upon the security of existing liens (which were to be paid off), and not upon the credit of the owner.

In the case of The City of Camden, supra, it is intimated that, while a stockholder or treasurer is not prevented from contracting with the company owning the vessel and thereby acquiring a lien on it, the fact that he is the legal custodian of its funds is strong evidence that the advances were made upon the credit of the owner. In that case the libelant was both a stockholder and treasurer of the company owning the boat, but it appeared that the company had no funds, at the time he loaned the money to the company, to pay for the claims against the boat, and has had no funds in his custody since that time. The lien was established, but postponed to those of other creditors.

In the case of The West Irmo, supra, the facts are more nearly parallel to those of the case at bar. In that case there was the same close identity between the libelant and the company owning the boats without actual part ownership. The court dismissed the intervening libel of the agent.

■ It is urged by the libelant that, although it was the managing agent of the vessel, it did not disburse the vessel, but, on the contrary, kept separate books and paid into and disbursed from the funds of the maritime company, and that these facts warrant the court in holding that the advances were made upon an implied agreement giving the libelant a lien therefor. In my opinion, however, these circumstances are not sufficient to establish

an implied agreement that the vessel was to be held liable.

■ Any agreement for such a lien must of necessity be found to exist, if at all, between two corporations which, though distinct entities, were for all practical purposes identical. The financial officer in each corporation was the same person. Such circumstances leave little room for the law to imply an agreement. The law looks to the substance and not to the form. I take this to be as true in admiralty as in other fields.

The intervening libel of Crowell & Thurlow, Inc., is therefore dismissed.