## Case No. 2,277.

### The CABOT.

[1 Abb. Adm. 150.][1]

District Court, S. D. New York. Feb. Term, 1848.

BOTTOMRY — SUBROGATION — SEAMEN'S WAGES—WHEN PAYABLE —PAYMENT IN FOREIGN MONEY —PRIORITY—UNNECESSARY SUIT—COSTS.

1. A bottomry creditor may, by payment of the seamen's wages, entitle himself to a novation in their place for recovery of their demands against the vessel. But he has no right to exact of them a formal assignment of their wages, nor the payment of his proctor's fees; nor, on an offer to satisfy their wages, can he require them to defer the prosecution of their demands until he chooses to institute a suit on the bottomry.

[Cited in The Tangier, Case No. 13,744; Hooper v. Robinson, 98 U. S. 539; The Sarah J. Weed, Case No. 12,350; The J. C. Williams, 15 Fed. 560.]

[See The Virgin v. Vyfhius, 8 Pet. (33 U. S.) 538.]

2. On the discharge of a seaman, his wages become immediately payable; and the act of congress of July 20, 1790, does not compel seamen discharged from their ship to wait until the expiration of ten days after the discharge of the cargo before bringing a suit.

[See The David Faust, Case No. 3,595; The Cypress, Id. 3,530; The William Jarvis, Id.

17,697; The Columbia, Id. 3,034; The Frank C. Barker, 19 Fed. 332.]

3. It is inequitable for a seaman, knowing that the papers are ready for the immediate commencement of a suit by his shipmates for the recovery of wages earned on the same voyage,—or by a bottomry holder,—who sues also for a portion of the wages of the voyage, previously paid by him, to endeavor to supplant such action, by urging out, in his individual name, process in advance of it, so as to subject the ship or her proceeds to needless expenses.

4. Costs will not be allowed the seaman in such case, nor to others who unite in the proceeding instead of joining in the prior suit in progress.

[See Reed v. Hussey, Case No. 11,646.]

5. When payment of wages is made to an American seaman at a foreign port, in foreign coin, on the sale of the ship, the breaking up of the voyage or the discharge of the seaman by the master, such coin is to be valued at its rate in the home port, under the laws of the United States; but foreign coin is to be estimated at its value at the place of payment, if the payment is a voluntary advance on the part of the master, made with the assent of the seaman.

In admiralty. This was a libel in rem, filed originally by Charles H. Sanborn, against the ship Cabot, to recover wages. The libellant was one of the crew of the ship Cabot, and had earned wages in the course of his employment on board her. The ship arrived at the port of New York from a circuitous voyage to ports in Europe and back, on December 28, 1847. No owner, nor any agent of an owner, appeared to take charge of the ship, or to pay her custom-house charges or other bills, and the master had no funds to meet them, or to pay the wages of the crew. The crew were discharged from the ship upon her arrival on the 28th. On January 4, 1848, the crew were notified to appear on board the ship, in order to settle their accounts, and assign them to the holders of a bottomry bond on the ship. Nearly the whole crew attended at that time, and the parties concerned in this action were present among them. The accounts of the crew were made out and presented to them, and they agreed to the correctness of such accounts, and,—except one of the libellants in this suit, who admitted the correctness of the account, but refused to sign any papers,—they signed their names to the estimate of wages as then made up and stated on board. The crew were then directed to appear the next morning at the office of Mr. Sturtevant, the proctor of the bottomry creditor, they being informed that a libel would be prepared at that time and place, to be filed in their names against the ship for the indemnity of the bottomry creditor, and that on verifying the libel and assigning their claims of wages to the bottomry creditor, their wages would be paid in full. To this all the crew present assented. On the same afternoon, the proctor of the bottomry creditor paid off the wages of three of the crew, and on the next day, pursuant to the arrangement, he paid off in full the wages of those who assigned their demands as agreed. The libellant Sanborn

---

[1] [Reported by Abbott Brothers.]

called that day (the 5th of January) to see the paper he had signed, and asked for payment of his wages. The proctor refused to pay him unless he assigned his claim for wages to the bottomry creditor, as. agreed upon; and, as Sanborn alleged, unless he also paid to him (the proctor) $10 for his fees in the transaction. This was denied by the testimony of the proctor, and the evidence was strongly conflicting between the parties, on the hearing, whether the proctor exacted a $10 fee from each seaman as a condition of paying their wages. The libellant Sanborn refused to assign his claim or to pay the fee claimed; and on the same day he employed another proctor to prosecute his demand. A summons was obtained from a commissioner in his behalf, and was duly served on board the ship on the same day; and no one appearing on its return to show cause against its prayer, a certificate was given by the commissioner that there was sufficient cause of complaint whereon to found admiralty process against the ship, and thereupon, on the 6th, a libel was filed in the name of Sanborn, and an attachment issued against the ship, upon which she was arrested. Before the attachment was issued, the proctor of the bottomry creditor, being apprised of the proceedings on foot, by the libellant, offered to pay him his wages in full if he would withdraw his suit. This offer the libellant refused to accept, unless his costs were also paid. The proctor refused to pay those costs, and no arrangement was effected between them. On January 6th, four other members of the crew, Chambers, Thompson, Smith, and McVickar, filed each his separate libel in personam against the master of the vessel, for their respective wages earned on the voyage, and procured warrants of arrest to be issued thereon, returnable on the 11th of January. On the 7th, the warrants were filed, with the marshal's return indorsed, "that the respondent was not found," and on the same day those libellants filed their joint petitions, and obtained an ex parte order of the court, making them co-libellants with Sanborn in this action. On the same day another libel was filed against the ship in the names of others of the crew, and process of attachment was taken out and served upon her. The last two actions were instituted by the same proctor who commenced that of Sanborn. On the night of January 4th, a libel was prepared by Mr. Sturtevant, the proctor of the bottomry creditor, in the names of all the crew, against the ship for the recovery of their wages. This libel, pursuant to the arrangement made on that day with the crew, was the next day signed by nine of them, and the names of the parties prosecuting in this suit, and the allegations applicable to their demands were stricken out of it. On the 6th, a summons was taken out in favor of those nine libellants, founded upon the allegations of the libel so altered, and a certificate was given on the 7th by a commis-

sioner, for process against the ship, and she was arrested thereon on the same day.

The matter was brought to hearing before the court on the pleadings and proofs in these various actions. The claimant, in his defence to this action, relied upon the circumstances under which the action had been instituted by Sanborn as above stated;—and he also claimed to charge various libellants with payments made them in foreign ports during the voyage, on account of their wages; which payments were made in French five-franc pieces, at the rate of one dollar each, and also with payments of hospital money made on their account. The action of the bottomry creditor had been carried to a final decree on the 8th of February; a venditioni exponas was issued thereon, upon which the ship was sold, and her proceeds, $4,300, were paid into court on the 11th of February, subject to the rights of all the litigant parties. The final decree in this cause, the one brought by Sanborn and others, was rendered on the 11th of February, three days subsequently to that in the bottomry suit, and the demands of the seamen who had filed their separate libel against the ship, were satisfied out of the proceeds in court on the 14th of February.

William Jay Haskett, for libellant.
Luther R. Marsh, for claimant.

BETTS, District Judge. The bottomry creditor had no authority in law to exact from the seamen a formal assignment of their claims for wages as a condition to the payment thereof. If he satisfied those claims in good faith, for the protection of his demand on the interest of the ship-owner, the court might recognize in his behalf a novation pro tanto to those claims, and, upon the final decree, secure to him a reimbursement of such advance, as equitably united or compounded with his lien debt. But he had no right to compel the seamen to put themselves or their demands under his control, or to coerce from them the payment of his proctor's fees, or to require them to defer the prosecution of their demands until he chose to institute a suit upon his bottomry security. His extreme privilege would be to pay off the wages, and prevent the fund being diminished by costs to the seamen, for the recovery of wages alone, and in that manner to become permitted to tack their lien on the ship to his own, and sue for both in his own name and right, and burdened with but a single bill of costs. This was the legal relation of the bottomry holder to the crew.

The objection that the suit by the seamen was prematurely commenced, cannot be sustained. The action is under section 6 of the act of July 20, 1790 (1 Stat. 131), which prescribes that if the wages of any seaman are not paid within ten days after the discharge of the cargo at the last port of delivery, the master may be summoned to show cause why a process in rem should not issue;

and if cause is not shown, process in rem shall issue accordingly in the manner prescribed by the act. It is true that ten days had not expired after the termination of the voyage when the proceedings of the libellants were taken. But the crew were all discharged by the master of the ship on her arrival here on the 28th of December, and their wages thus became due and payable immediately. In such case the statute does not compel seamen to wait ten days before bringing suit for their wages. Such discharge from the ship terminates all connection of the seamen with the voyage, or with the unlading of the ship, and they are thereby remitted to their right of action by the law maritime. See The Cypress [Case No. 3,530].

But section 6 of the act of 1790 requires that in all suits under the act by seamen against a vessel for wages, "all the seamen or mariners having cause of complaint of the like kind against the same ship or vessel, shall be joined as complainants;" and, therefore, after proceedings are on foot in behalf of a part of the crew for the recovery of wages on the common voyage, it is not competent for others of the same crew to institute separate actions on their individual demands therefor. The ship is to be burdened with no more than the expenses of one prosecution, and those of the crew not named in the proceeding must cause themselves to be connected with the first action instituted, and the court will regulate and distribute the costs between co-complainants in such proceedings, as may be equitable. It was irregular and against the equity of the statute, for the libellant Sanborn, after he was aware that a suit for wages for the voyage was in preparation to be immediately commenced by others of the crew, to attempt to supplant their action, and to place the business in the hands of his proctor alone, by getting his process on foot a few hours in advance of theirs; and as such proceeding was unnecessary and in his own wrong, it must be at his individual expense. He was also apprised that a fund was ready for the satisfaction of his wages; and after such notice, the commencement of a suit against the vessel by him singly must be deemed needless and vindictive, unless clear proof is given that it was indispensable to the protection of his interests, or that he had given previous notice that he would not await the proceedings of his shipmates. These steps might have given him color of claim to costs; but then he would acquire it only in case of unreasonable delay on the part of the others to prosecute their action.

The co-libellants of Sanborn, made such upon their own petition, after both suits were commenced against the ship, have no equity to costs. Not only were they equally bound with Sanborn to unite in the suit instituted and then in progress, in the name of others of the crew, or at least to have made a demand of payment out of the funds in the hands of Mr. Sturtevant, but their proceeding was manifestly vindictive, and with intent to create costs and to oppress the master and owners. They employed the same proctor to commence individual actions in personam against the master, and filed their several libels, and sued out process therein, and before the return day irregularly caused returns to be made by the marshal that the defendant could not be found, and thereupon procured themselves to be associated with Sanborn in the action against the vessel.

As the decree to be made in the cause will provide for payment of the balance of wages actually due to the libellants in this cause, though without costs, it is necessary to advert to the counter-claim or charges against those wages set up by the claimant.

The libellants received payments on account of their wages, while the ship was in foreign ports, which were made to them in five-franc pieces, each being reckoned as a dollar; and they insist that they should be charged with these pieces only at the valuation of ninety-three cents each, that being their value in the United States, by the act of June 25, 1834 (4 Stat. 681). The libellants had a right to receive their wages in American coin or its equivalent, whether paid them abroad or at home, if the master was bound by contract or act of congress to make the payment at the time,—the shipping contract being in that currency. It was stipulated by the articles that the crew should not be entitled to their wages, or to any part thereof, until the arrival of the vessel at her last port of discharge, and the delivery of her cargo. That was to be in an American port. Payments made to the libellants during the voyage would therefore be chargeable to them at the value of United States currency there, the mutual act of the parties being tantamount to an assent to make and receive payment abroad.

The five-franc pieces paid the libellants abroad, are accordingly to be credited to the ship, in making up their accounts, at the relative value of that coin to the American silver dollar, at the time and place where it was received by the seamen. That is, the crew were entitled to so much local currency as would procure at the place the American currency due them.

In respect to the claim for hospital moneys paid by the ship, whatever the sum may be, nothing can be charged the libellants therefor, beyond the amount fixed by law at the time of the payment. This is a compulsory tax charged upon them by positive law. Any sums paid by the master or owners exceeding that amount, must be his or their loss.

The decree will be that the libel be dismissed, but without costs. For the claimant not having made tender of wages to the libellants or paid them into court, and hav-

ing unnecessarily defended the action by answer and claim, when the interposition of the court to stay the suit of the libellants, and to compel them to await the decree in that already in course of prosecution in behalf of their shipmates, could have been had on motion or petition, no costs can be awarded in their favor.

The action brought by the libellants will be regarded as tantamount to a petition upon the fund brought into court by the other two actions pending concurrently with this against the ship.

A reference to a commissioner is ordered to ascertain the balance of wages due to the libellants respectively, upon the principles before declared, with interest thereon from December 28, 1847; (unless the amount can be settled by agreement;) and on the coming in and confirmation of the report, a decree may be entered for the payment of the amounts reported due, out of the proceeds of the vessel in court.