## The J. C. Williams.

*(District Court, S. D. New York.  January, 1883.)*

1. VESSEL—SHIP'S HUSBAND—LIEN FOR ADVANCES—SUBROGATION.

> Although, ordinarily, the general agent of a ship, or the ship's husband, has no maritime lien for advances made in the usual course of his employment about the business of the ship, because made presumably on the credit of the owners, yet when the circumstances show that his agency was an attendant upon his situation as mortgagee of the vessel, and for the purpose of further security, his advances in the management of the ship's business should be held to be made, not upon the personal credit of the mortgagor, but upon the credit of the vessel, and for the protection of his mortgage; and a maritime lien should, therefore, be sustained in his favor for such necessary payments and supplies as would be liens in favor of other persons, and he should be deemed equitably subrogated to the liens paid by him.

2. SAME—NO LIEN FOR COMMISSIONS.

> The agent's own commissions for advances and for obtaining freights should not, however, be allowed as liens.

In Admiralty.

*W. R. Beebe,* proctor for libelant.

*John B. Whiting,* proctor for claimant.

BROWN, J.  This cause, having been tried before a commissioner to whom it was referred, comes before me upon exceptions to his report in favor of the libelants for the sum of $4,150.10.  The libelant is the receiver of Brett, Son & Co., who, in March, 1875, took a mortgage upon five-eighths of the bark, to secure $10,000 from John C. Williams, to whom they advanced that money to aid in the construction of the vessel.  The bark was built at Shelbourne, Nova Scotia, and was a British vessel.  At the time of the advances it was agreed that Brett, Son & Co., for their security, should have this mortgage, and also be the agents of the ship in New York.

The libel was filed in October, 1882, to recover a balance due to Brett, Son & Co. for various advances and payments on account of the ship from February 24 to May 31, 1882; and a supplementary libel was afterwards filed for additional charges and payments.

During several years after the bark was finished, Williams was in charge of her navigation as master and as owner of five-eighths, Brett, Son & Co. being her general agents in New York.  Prior to the charges for which the libel is brought, however, Williams had left the vessel, and was succeeded by the first mate, Smith, as master, who is not a part owner; and the business of the bark remained under the management of Brett, Son & Co., as before.  So far as appears from

the evidence, the bark seems to have run from New York to various ports and back, and the entire business management, procuring charters, attending to her outfit, repairs, payment of bills, and the collection of freights, seems to have been wholly in the hands of Brett, Son & Co. The owners of the other three-eighths, who appear as claimants of the vessel, received their share of dividends from Brett, Son & Co. as profits were made, while the proportion due to Williams, as owner of the remaining five-eighths, was applied on the mortgage debt.

Upon the hearing before the commissioner, some proof in regard to various items having been given, the correctness of the libelant's charges and credits were admitted by the claimants, reserving only the question whether they constituted a maritime lien which could be enforced *in rem* against the vessel.

If the situation of Brett, Son & Co., and their relation to the ship and her owners, were merely that of general agents, or ship's husband, making the advances here sought to be recovered merely in the ordinary course of their duties as such, I should be compelled to hold, upon the authorities, that they have no lien upon the ship therefor, although the owners would be personally liable to them for their several shares. In such cases the agent, or ship's husband, is presumed to act upon the personal responsibility of the owners only. He represents them in advancing moneys or in paying charges. His act is their act, and, ordinarily, must be presumed to be designed to discharge the ship from burdens, not to charge her, or to retain liens upon her, through any presumed equitable assignment or subrogation. *The Larch*, 2 Curt. 427; *The Sarah J. Weed*, 2 Low. 555, 562; *The Tangier*, 2 Low. 7. But in this case the agency of the vessel was evidently attendant upon the mortgage, and designed as a further security for the payment of the money advanced. When Capt. Williams left the vessel, no considerable part of the mortgage had been paid, and from that time, at least, Brett, Son & Co. had exclusive management of the business of the ship for the purpose of working off the mortgage debt.

Under such circumstances, it seems to me that it cannot be presumed that the advances and payments made by Brett, Son & Co., in the business of the ship, were made upon the personal credit of the owner. On the contrary, they were charges and payments necessarily made by Brett, Son & Co. in their endeavor to realize something to the credit of their mortgage on five-eighths of the vessel, and, in my judgment should be deemed to be made upon the credit of the ves-

sel. This, it seems to me, would be clearly so, as respects Williams, owner of the five-eighths, and as respects the three-eighths owned by the claimants. I think the same inference should be drawn from the fact that the claimants clearly acquiesced in the management of the vessel by Brett, Son & Co., and must have known the circumstances, their situation as mortgagees, and the object of the management of the ship by them. As all these payments and advances were made with the claimants' knowledge and acquiescence, they would be, clearly, personally liable to Brett, Son & Co. for their shares of these necessary payments and disbursements. To them it does not appear to have been of any practical account whether the advances, as respects the three-eighths, are considered to have been made upon the credit of the vessel or upon their own personal credit. The former was clearly the case as to the five-eighths, and from that, I think, a similar intention should be inferred as to the three-eighths.

All the evidence points to the credit of the vessel and the recovery of the mortgage debt as the grounds of all the advances and payments by Brett, Son & Co.; and such, I think, must, in this case, be considered as the understanding of all the parties. Liens arising in the course of the business of the ship in favor of other persons would have priority over the mortgage lien, and in paying the amounts of such prior liens for the protection of their mortgage interest, Brett, Son & Co. should be deemed equitably subrogated thereto. *The Cabot*, Abb. Adm. 150; *The Tangier*, 2 Low. 7; *The Sarah J. Weed*, Id. 562.

For these reasons I think the present case should be held to be an exception to the ordinary rule as respects a ship's husband or general agent, and that the claim of a maritime lien by Brett, Son & Co. should be sustained for such necessary charges and payments for supplies or other necessaries furnished in the business of the ship as would have constituted liens if furnished by other persons, as being made in this case upon the credit of the vessel, and upon an equitable subrogation to the liens paid. Their own commissions, however, on the charter procured by them, should not be allowed as a maritime lien, nor commissions on their own advances, amounting together to $243.90. With this deduction the report should be confirmed, and a decree entered accordingly for the libelant, with costs.