## THOMPSON v. UNITED STATES.

(District Court, S. D. Alabama, S. D. May 16, 1923.)

**1. Maritime liens ⊕⟹25—One advancing wages of crew held entitled to lien on vessel owned by United States.**

One advancing money to master of vessel owned by United States for wages of crew *held* entitled to lien on vessel, under Suits in Admiralty Act (Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼*l*).

**2. Maritime liens ⊕⟹29—Libelant, furnishing oil to vessel owned by United States, and advancing money to pay stevedores, held entitled to lien.**

Where libelant furnished oil to vessel owned by United States, at request of agent authorized to buy supplies furnished at master's request, and advanced money to pay stevedores for loading vessel at master's request, *held*, that libelant was entitled to lien on vessel, under Suits in Admiralty Act (Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼*l*).

In Admiralty. Libel by T. C. Thompson, doing business as the Van Heynigen Brokerage Company, against the United States, as owner of the Anna E. Morse. Decree for libelant.

Supplementing opinion in 287 F. 364.

Pillans, Cowley & Gresham, of Mobile, Ala., for libelant.

Aubrey Boyles, U. S. Atty., of Mobile, Ala.

ERVIN, District Judge. The libel was filed under what is commonly called the Suits in Admiralty Act (41 Stat. 525 [Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼*l*]), and seeks to recover three items, namely, $700 advanced to the master for payment of wages of the crew, $3,567.78 to the stevedores for loading the vessel at the request of the master, and $1,579.18 for oil furnished the vessel and paid for by libelant.

The answer denies that any of the sums were paid or furnished on the credit of the steamer Anna E. Morse or her owner. It further sets up as defensive matter that libelant was an agent of the United States Transport Company, Inc., and acted on behalf of that company, and that all payments made by libelant were made as agents of and on the credit of such transport company, and not otherwise. It further sets up that the Virginia Shipbuilding Company and the Shipping Board Emergency Fleet Corporation made and entered into a certain agreement in writing, by which the Shipping Board should sell to the Virginia Shipbuilding Company the Anna E. Morse, which was then claimed by the United States, and at a certain price, under the terms of the contract then entered into.

Among the provisions was that the Shipbuilding Company would not suffer or permit to be continued any liens or charges which would be prior to a certain mortgage of the vessel to the government, and that the said company would at their own expense maintain the vessel and repair her and keep her in good condition, etc. It then goes on and sets up, not only this contract, which is the same mentioned in the opinion rendered in The Anna E. Morse by the Circuit Court of Appeals of the Third Circuit, and found in 286 F. 794. In fact, the same defenses, and based on all of the facts commented on in that opinion, were urged in the present case. I have read carefully the opinion there rendered, as well as the one of the District Court, on appeal from which such opinion of the Circuit Court of Appeals was rendered, and I concur in the conclusions reached by the Circuit Court of Appeals. I therefore do not find it necessary in this case to discuss these questions, but refer to such opinion so found in 286 Federal Reporter.

[1, 2] The question for me to determine is whether, assuming that the United States Transport Company, Inc., was authorized to

bind the Anna E. Morse for supplies furnished by request of the master of the vessel or for securing services which were furnished on the credit of the vessel, libelant is entitled to a decree. The libel charges that the advances were made on the credit of the vessel. It seems negotiations were opened with libelant by a telegram sent for the United States Transport Company, Inc., by the Congress Coal & Transportation Company, Inc., but proof shows that the Coal Company was a subsidiary of the United States Transport Company and sent the telegram for them; the telegram being followed by a letter of February 18th. This telegram of February 16th has reference specifically to the ship Livingstone, but it contains the following words: "If offers continue, will establish regular services our line out of Gulf regular port of call (stop) pending permanent arrangement will offer you our agency at one fourth per cent. this permanent shipment at point also two and a half per cent. on cargo you book out of Mobile for Pacific (stop) also agency fee $100.00"

It further appears that this agency arrangement was entered into, and on April 9th the United States Transport Company, Inc., wired the Van Heynigen Brokerage Company as follows: "Supply Anna E. Morse five hundred barrels fuel oil." And the oil seems to have been furnished under this telegram, and before payment by libelant the bill was approved by E. O. Smith, master.

The $700 paid for the crew seems to have been advanced by the libelant to the captain, who signed the receipt for the same dated 4/9/21, reciting it was for account of wages Anna E. Morse.

The stevedoring charges, which were rendered the vessel during its loading in Mobile, were paid directly to the stevedores by the libelant. It will therefore be seen that, of the three items, one, the seamen's wages, was advanced by libelant to the master, and as to it there can be no question of a lien on the vessel, if the conclusion reached in the case heretofore referred to were correct.

That leaves the items for oil and stevedoring which were paid by the libelant to the respective claimants. As to each it is contended that the payment by libelant was a voluntary payment on their part, under the ruling in Pensacola S. Co. v. United States Shipping Board Emergency Fleet Corporation (C. C. A.) 277 F. 889. It is true that the court in that case did hold that the voluntary payment by one's agent in accordance to instructions given by the latter, and on the faith of latter's promise of reimbursement, gives no lien on the ship by right of subrogation to the liens paid; but I do not think that to be the case here.

Under the facts shown in this case, I am of the opinion that libelant has a lien by reason of the payment made by them, and therefore a decree will be entered for the amount of these items, with interest at 6 per cent. from the date of payment.