## THE EURANA.

## UNITED STATES et al. v. ADAMS et al.

(Circuit Court of Appeals, Third Circuit. October 4, 1924.)

### No. 3136.

**1. Maritime liens ⚖=6—General agent does not have lien for advances and disbursements for principal.**

In the absence of an express agreement therefor, or facts from which it would be implied, a general agent does not have a maritime lien for advances and disbursements made in behalf of vessels of his principal during his agency.

**2. Maritime liens ⚖=6—Claimant held not to have maritime lien as against receivers.**

That funds or property of claimant were used by the general agent of a steamship company in making advances and disbursements for a ship of the company, for which he was not entitled to a lien, does not give claimant a maritime lien on the vessel as against receivers of the company.

**3. Maritime liens ⚖=1—Maritime liens are stricti juris.**

A maritime lien, being secret and unrecorded, is stricti juris, and cannot be conferred on the theory of unjust enrichment or subrogation, and the right to such lien cannot be extended by judicial construction, analogy, or inference.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Intervening libel by the United States and the United States Shipping Board Emergency Fleet Corporation against the steamship Eurana and Robert C. Adams and Stuart A. Young, ancillary receivers of the Green Star Steamship Corporation. Said intervening libelants appeal from a decree of the District Court denying a maritime lien. Affirmed.

Walter G. Winne, U. S. Atty., of Hackensack, N. J. (Glen R. Snider, Admiralty Counsel U. S. Shipping Board, John W. Crandall, and Frederick A. Whitney, all of New York City, of counsel), for appellants.

Bigham, Englar & Jones, of New York City, and McCarter & English, of Newark, N. J. (T. Catesby Jones and Charles F. Quantrell, both of New York City, of counsel), for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and DICKINSON, District Judge.

DAVIS, Circuit Judge. Struthers & Dixon, Inc., hereinafter called the agent, with its main office in San Francisco, Cal., represented the Green Star Steamship Corporation as general agent in 1920 and 1921. The District Court found that "they were also agents in the Pacific for a number of vessels, some owned by the Fleet Corporation and operated by it, and some operated for it." At the same time it was operating a number of vessels in the Orient at the ports of Kobe and Yokohama, Japan, and Shanghai, China, for the United States Shipping Board Emergency Fleet Corporation, hereinafter called the corporation, the agent disbursed the vessel Eurana, belonging to the Green Star, at different times in various amounts, which aggregate $10,756.-17. It also ordered fuel oil transferred to the Eurana from vessels, West Ivis and West Henshaw, belonging to the corporation in the Orient at that time, for which there is an unpaid balance after certain adjustments and credits of $4,310.26. The corporation contends that these disbursements were made out of funds belonging to it which were in the hands of its agent, whose stock was owned by the Green Star, and that the amounts of these disbursements, together with the amount due for oil should be paid by the receivers of the Green Star. The case was tried without a jury to the court, which decreed that the agent had made the disbursements and furnished the oil on the credit of the owner, the corporation, and not on the credit of the vessel. It therefore held that the agent was not entitled to a maritime lien. From this decree the corporation appealed to this court.

In acting as agent in the Orient in 1920 and 1921 for both the corporation and the Green Star, the agent was collecting freight, making disbursements for vessels, making charter parties, and doing whatever was necessary to be done in operating those vessels. They seem to have been operated directly by the branch offices of the agent in the Far East. It appears from the evidence, and the trial judge found it as a fact, that all the money received in connection with these vessels for freight, charter parties, and everything in general, was kept in a single account at each branch office in the various ports, without regard to the amount that was to be charged or credited to any particular vessel. The amounts chargeable against individual vessels were later determined in the San Francisco office from the data sent there by the branch offices at different ports.

The testimony as to the receipts and disbursements for particular vessels came from the auditor of the agent, who, from the books, copies of accounts, cash sheets, and statements of the various subagents in the Orient, made an analysis of the receipts and disbursements and allocated them to the individual vessels. This analysis was difficult and somewhat inaccurate. Testimony from it resulted in confusion and contradiction here and there, and upon the whole is unsatisfactory as a basis on which to predicate a maritime lien. From these allocations, the corporation alleges that the agent disbursed the Eurana out of funds belonging to it, and for these funds and oil it claims a maritime lien.

It should be kept in mind that this controversy is not between the corporation and agent, but between the corporation and the receivers of the Green Star Corporation. The corporation must secure a lien, if at all, on the ground that the agent was acting for it; or it must disavow the agency and base its action on some other ground. If it proceeds upon the theory of agency, the agent was either general or special. The contract, M-O4, under which it was acting, and the course of conduct in relation to the vessels assigned to it, show that Struthers & Dixon was a general agent. Under that agreement the corporation made Struthers & Dixon "its agent to manage, operate, and conduct the business of such vessels as it

has assigned or may assign to the agent." The agent was "to do all things which the corporation is required by law or custom to do, either as owner of the vessels or as carrier of the cargo." It collected freight, made charter parties, kept accounts, made disbursements for vessels, and did whatever was necessary for their successful operation in the Orient. This it did, both for the Green Star and the corporation. The learned District Judge said:

"The circumstances that Struthers & Dixon, Inc., were general agents, and also because of the close corporate relation between the Green Star Steamship Corporation and Struthers & Dixon, Inc., it is apparent that the advances, disbursements, and fuel oil furnished were furnished on the credit of the owner, and not on the credit of the vessel, and that there was no intention, express or implied, between the parties which would give rise to a maritime lien. The mere circumstance that separate accounts were kept with each ship cannot avail as against the clear, positive evidence that the advances were made on the credit of the owner, and not on the credit of the ship; nor is the circumstance that Fleet Corporation money was advanced for the disbursements of the Eurana suggestive that there was an intention to create a maritime lien. Surely the agents in the Far East who made the disbursements could not distinguish between Fleet Corporation money and Green Star money. As none of the employees, who made the actual disbursements, transferred the oil, or made advances, were called as witnesses, nothing can be predicated from a mere course of bookkeeping."

[1] We think the evidence supports this conclusion. It is well settled that in the absence of an express agreement to the contrary, or facts from which it would be implied, a general agent does not have a maritime lien for advances and disbursements which he makes in behalf of vessels belonging to his principal during his agency. The J. C. Williams (D. C.) 15 Fed. 558; The Raleigh (D. C.) 32 Fed. 633; China Mutual Insurance Co. v. Ward, 59 Fed. 712, 8 C. C. A. 229; The Gyda (D. C.) 235 Fed. 266, 269; The Ascutney (D. C.) 278 Fed. 991; The Centaurus (C. C. A.) 291 Fed. 751. The agent is presumed to rely upon the credit of the owner, and not the vessel. This presumption may be rebutted and overcome. The Puritan (D. C.) 258 Fed. 271; The Ascutney (D. C.) 278 Fed. 991, 993. To overcome it, however, the agent must affirmatively prove the existence of an express agreement giving him a lien or such circumstances as justifies the implication of one. The Raleigh, supra; The Puritan, supra; The City of Camden (D. C.) 147 Fed. 847, 849.

There was no express agreement, and no facts from which one can be implied, that the corporation was to have a maritime lien for the disbursements and oil. On the contrary, the corporation asserts that the disbursements were made and oil furnished without its knowledge or consent, and that in making the disbursements and furnishing the oil its agent acted outside of the scope of its authority. Consequently it cannot secure a lien on the ground of agency. We think the District Court was right in concluding that the disbursements were made and the oil was furnished on the credit of the owner, and not of the vessel. Every fact, logically interpreted, forces this conclusion.

[2] A maritime lien on the ground of agency is disavowed by the corporation. It is proceeding on the theory that, because its funds were spent and its oil was used for the benefit of the Eurana, it should have a maritime lien against that vessel. This might be true if the controversy was in equity between the corporation and the agent, or the corporation and the Green Star; but that is not the fact. The corporation is seeking a maritime lien, which is a secret and unrecorded incumbrance, and is unlike the lien of a mechanic or materialman, or claims in bankruptcy or equity. These proceed on the theory that all creditors shall participate share and share alike.

[3] A maritime lien, being secret and unrecorded, is stricti juris, and cannot be extended by judicial construction, analogy, or inference. Such liens are an exception to the rule that all creditors have equal rights in the property of their debtor. They rest upon an entirely different principle. The maritime lien had its origin in the desire to protect the ship and the mechanic's lien in the desire to protect mechanics and materialmen. Vandewater v. Mills (Yankee Blade) 19 How. (60 U. S.) 82, 15 L. Ed. 554; Piedmont Coal Co. v. Seaboard Fisheries, 254 U. S. 1, 41 Sup. Ct. 1, 65 L. Ed. 97. Maritime liens, therefore, cannot be conferred on the theory of unjust enrichment or subrogation. Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U. S. 490, 43 Sup. Ct. 172, 67 L. Ed. 364; Pensacola Shipping Co. v. U. S. Shipping Board Emergency Fleet Corporation (C. C. A.) 277 Fed. 889.

We see no principle, under the law and the facts in this case, on which the corporation may have a maritime lien against the Eurana. Therefore the decree of the District Court is affirmed.