**CARIBBEAN MARITIME FINANCE CO., LTD., Plaintiff-Appellee,**

v.

**MARINA MERCANTE NICARA-GUENSE, S.A. et al., Defendants-Appellants.**

**No. 72-1618.**

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1972.

John H. Tappan, Mobile, Ala., for defendants-appellants.

A. Clay Rankin, III, Mobile, Ala., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and DYER, Circuit Judges.

AINSWORTH, Circuit Judge:

The question before us on this interlocutory appeal is whether the District Court correctly concluded from certain stipulated facts that a maritime lien existed in favor of a subcharterer against a vessel for funds advanced by the subcharterer for the benefit of the vessel owner under a charter party which included a Prohibition-of-Lien Clause.

Marina Mercante Nicaraguense, S. A. (Mamenic) entered into a time charter party dated April 30, 1969 whereby it chartered the vessel EL SALVADOR to Gallen Line, Inc. Gallen Line, Inc. subsequently subchartered the vessel to Caribbean Maritime Finance Company (Caribbean) by charter party dated September 2, 1969. The terms of the two contracts, executed on the standard New York Produce Exchange Time Charter forms, are essentially identical.

Clause 18 of the charters, which provides both for the creation and prohibition of liens, reads as follows:

"That the Owners shall have a lien upon all cargoes and all sub-freights

for any amounts due under this Charter, including General Average contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or escrow deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel."

The charters also provided in Clause 5 thereof that:

"Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject to 2½% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application of such advances."

During the term of the subcharter, Caribbean contends it advanced funds as required by the captain of the vessel to meet the vessel's ordinary disbursements at various ports. No deduction from charter hire was made for this amount and Caribbean has not been repaid for these advancements. Caribbean seized the EL SALVADOR and Mamenic appeared as claimant.

The parties stipulated that their dispute centered on the question of whether or not the advances referred to in the preceding paragraph created a maritime lien against the vessel and requested that the District Court determine the question of liability, reserving the question of quantum of damages, if any, for later determination. The District Court concluded that according to the terms of the charter, a maritime lien existed in favor of Caribbean against the vessel, from which ruling Mamenic appeals. We affirm.

Appellant contends that the Prohibition-of-Lien Clause prevented the creation of a maritime lien, relying in support of its contention on United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L. Ed. 361 (1923).

In *Carver* the United States owned two vessels which were in the possession of a charterer. Under the terms of the charter party the charterer was required to pay all costs and expenses incident to the use and operation of the vessels. 260 U.S. at 488, 43 S.Ct. at 182. Supplies were furnished to the vessel CLIO upon the orders of the charterer's port captain whose duty was to procure the supplies. One of the questions certified to the Court was whether a maritime lien would have arisen against the vessel if it had been privately owned. The Court answered the question in the negative. However, the decision turned on a point not relevant here. The Court addressed itself to the duty of a supplier of materials to use proper diligence to ascertain whether the agent who ordered the supplies had the authority to bind the vessel, and the failure of that supplier to so act.

"The Act of 1910 by which the transactions with the Clio were governed after enlarging the right to a maritime lien and providing who shall be presumed to have authority for the owner to procure supplies for the vessel, qualifies the whole in Section 3 (Comp.St. § 7785) as follows:

'But nothing in this Act shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for the sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor.' [1]

1. The quoted language was contained as the final clause in 46 U.S.C. § 973 at the time these proceedings were instituted. It has been subsequently eliminated by congressional repeal. See 85 Stat. 285 (Aug. 10, 1971). With this exception, the statutory provisions pertinent to the creation of maritime liens remain the same. These statutes (46 U.S.C. §§ 971–973) provide that:
§ 971: "Any person furnishing repairs, supplies, towage, use of dry dock

"We regard these words as too plain for argument. They do not allow the materialman to rest upon presumptions until he is put upon inquiry, they call upon him to inquire. To ascertain is to find out by investigation. If by investigation with reasonable diligence the materialman could have found out that the vessel was under charter, he was chargeable with notice that there was a charter; if in the same way he could have found out its terms he was chargeable with notice of its terms. In this case it would seem that there would have been no difficulty in finding out both."

United States v. Carver, 43 U.S. at 488, 489, 43 S.Ct. at 182. In the instant case diligence, or lack of it, by the charterer to ascertain the information required by *Carver* plays no part, for it is stipulated that the advances were made as required by the captain of the vessel. The captain, under the basic time charter agreement involved here, is an agent of the owner. It is the owner, not the charterer, who "runs and mans the ship" under these circumstances.[2] The ship, of course, is subject to being bound. This is evident from the first sentence of Clause 18 which provides for liens in favor of charterers.

A further significant distinction is that in *Carver* the expenditure was not, as here, for the account or benefit of the owner but for the charterer.[3] The cases cited by Mamenic as authority for the proposition that the inclusion in a charter party of the Prohibition-of-Lien Clause bars a charterer's lien are distinguishable for the same reason.[4]

The fact that the charter party includes a Prohibition-of-Lien Clause does not operate to preclude imposition of a lien where the advances are authorized by the owner and are, as here, of a nature which normally give rise to a maritime lien. 46 U.S.C. § 971;[5] Roberts v. Echternach, 5 Cir., 1962, 302 F.2d

---

or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

§ 972: "The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel."

§ 973: "The officers and agents of a vessel specified in section 972 of this title shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel."

2. Gilmore and Black, Admiralty (1957), at 205.

3. Appellant contends that the existence of the Prohibition-of-Lien Clause is sufficient in itself to bar the charterer's lien, and points out that in Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1940) [a case decided in favor of a charterer because of the failure of the parties to include a Prohibition-of-Lien Clause], the Supreme Court observed that "In the Carver case 'the primary undertaking' was that 'a lien shall not be imposed.' The lien was denied, not because the charterer was bound to provide and pay for supplies but because the charter party prohibited the lien." 310 U.S. at 276, 60 S.Ct. at 941. We do not agree with appellant's reasoning. To say that the denial was predicated on the lien prohibition clause, is not to say that the Court failed to consider the attending circumstances: The lack of diligence on the part of the materialman asserting the claim to the lien as well as the obligation imposed on the charterer to provide and pay for the supplies, two factors not present here.

4. *See* Schilling v. A/S D/S Dannebrog, 2 Cir., 1963, 320 F.2d 628; United States v. S. S. Lucie Schulte, 2 Cir., 1965, 343 F.2d 897; Pensacola S. Co. v. United States Shipping Board E. F. Corp., 5 Cir., 1922, 277 F. 889.

5. See note 1, *supra*.

370, 372. In *Roberts* we recognized the enforceability of the disputed clause even under circumstances where the owner had relinquished possession of the vessel to the charterer, holding that the Prohibition-of-Lien Clause "does not undertake to deal with the power of the owner himself to subject his vessel to maritime liens," 302 F.2d at 372.[6] A fortiori, a lien is created where the vessel is under the control and dominion of the owner and the money advanced is, by the express terms of the charter party, to be "deducted from the hire."

Affirmed.

---

6. It is interesting to note that the Second Circuit in *Schilling, supra,* cited by appellant, expressly approved the quoted language from *Roberts.* Judge Friendly, speaking for the Court, said: "Neither do we think that a lien in favor of the charterer for amounts contracted by the owner to be paid for fuel on board at the time of redelivery would be excluded in a proper case by the 'Charterers will not suffer' provision of Clause 18 quoted above. For we agree with Judge John R. Brown that the usual prohibition of liens clause 'does not undertake to deal with the power of the owner himself to subject his vessel to maritime liens,'" (citing *Roberts*). 320 F.2d at 628.